IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

VERONICA PERKINS                                                                                    PLAINTIFF

V.                                              4:07CV01098 JMM

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
JAMES SHARPE, IN HIS OFFICIAL CAPACITY AS
SUPERINTENDENT OF THE SCHOOL DISTRICT, and
GWEN WILLIAMS, WILLIAM VASQUEZ, CHARLIE WOOD,
MILDRED TATUM, SHANA CHAPLIN, PAM ROBERTS AND
DANNY GILILLAND, PULASKI COUNTY SPECIAL SCHOOL
DISTRICT SCHOOL BOARD MEMBERS                                            DEFENDANTS

## ORDER GRANTING SUMMARY JUDGMENT

Pending is the Defendants' Motion for Summary Judgment and Motion in Limine. Plaintiff has responded to the motions. For the reasons set forth below, the Motion for Summary Judgment is GRANTED and the Motion in Limine is MOOT.

Facts

Plaintiff, Veronica Perkins, has worked as an administrator in the Pulaski County Special School District (the "District") since 2000. In April 2007, Plaintiff applied for the vacant principal position at North Pulaski High School ("NPHS") in the District.

On May 3, 2007, a biracial interview committee formed by the District conducted interviews of the applicants for the position, including Plaintiff and Clarence Bull ("Bull"), a white male. The interview committee recommended that Plaintiff be promoted to the vacant principal position at NPHS over Mr. Bull. The committee ranked Plaintiff one (1) point higher than Mr. Bull. On May 8, 2007, the Superintendent of the School District, James Sharpe, accepted the recommendation of the selection committee and recommended to the District Board of Education that Perkins be hired.

The District's Board of Education consists of seven members. (Def.'s Ex. B). In May 2007, the Board consisted of two African-American females, one African-American male, two white males and two white females. On May 8, 2007, the District's Board of Education voted unanimously to hire Mr. Bull as the principal of NPHS. Danny Gilliland, a member of the District's Board of Education who represents Zone 5 which includes NPHS, stated that the Board considered the recommendation for the vacant NPHS principal position. Id. He stated that the Board "considered a number of factors, including the qualifications of Veronica Perkins and Bull, the need for stability at NPHS, Bull's experience as the interim principal at NPHS during the 2006-2007 school year, and the views of the faculty and staff at NPHS, and the NPHS community." Id. Mr. Gilliland expressed the need for stability because of the "virtual revolving door of principals" at NPHS since 2000. Mr. Gilliland further explained, "Many of the Board members received numerous contacts from students, parents, faculty and other persons in the community where NPHS is located to express their strong support for Bull to be awarded the principal position at NPHS." Gilliland cited a somewhat similar situation in 2007-2008 when Ms. Janice Haynes, an African-American female, had been the interim principal at Mills High School. The Board voted to approve the recommendation of Ms. Haynes for the permanent principal position at Mills "following her successful stint as the interim principal at Mills and Ms. Hayne's [sic] strong support among the Mills High School community, faculties, staff and parents at the school." Id.

Following the action by the District's Board, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. In her Charge, Plaintiff alleged that she was discriminated against by the District when she was not selected for the principal position at

NPHS because of her race, African-American, and her sex, female, all in violation of Title VII of the Civil Rights Act of 1964. Plaintiff further contended in her EEOC Charge that by not hiring her, the District was exercising retaliation in violation of Title VII because she filed a previous Charge of Discrimination in July of 2006.

In her Complaint, Plaintiff claims that she was discriminated against on the basis of her race in violation of Title VII of the Civil Rights Act of 1866 as amended and 42 U.S.C. § 1983 and in the terms and conditions and privileges of her employment in violation of 42 U.S.C. § 2000e-2(a)(1).[1] (Amended Complaint, at p. 3-4).

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

---

[1] Plaintiff did not include allegations of discrimination based upon her sex or allegations of Equal Protection violations in her Amended Complaint. Therefore, the Court will not address these issues.

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### Discrimination

To prove a prima facie claim of discrimination, Plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified and applied for an available position; (3) she was rejected for that position; and (4) employees similarly situated who are not part of the protected group were promoted instead.  *Moore v. Forrest City School Dist.*, 524 F.3d 879, 883 (8th Cir. 2008)(citing *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006) (laying out the elements in reference to a Title VII claim); *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005) (stating, in reference to sexual harassment claims, that the elements of a prima facie case are the same regardless of whether a plaintiff sues under § 1983 or Title VII).  Plaintiff "bears the burden of offering evidence of discrimination, and where the

evidence is equipoise, a finding for the defendant is appropriate." *Moore*, 524 F.3d at 883 (citing *Peterson v. Scott County*, 406 F.3d 515, 521 (8th Cir. 2005) (stating that "[t]he ultimate burden of proving discrimination remains with the plaintiff at all times")).

Plaintiff has stated a prima facie case of discrimination by the District for failure to hire her as the principal of NPHS in 2007. The District states, however, that Mr. Bull was selected by the Board because he was the best candidate for the job. Defendants cite Mr. Bull's 29 years of experience in the District, his successful year as interim principal of NPHS, the need for stability in the principal position there, and the strong support of students, parents, faculty, and community at NPHS. (Def.'s Ex. B).

Plaintiff contends that this legitimate reason for the District's failure to hire her is a pretext for unlawful discrimination based upon her race. Plaintiff bases her argument on the fact that the bi-racial committee recommended her to the Pulaski County Special School District Superintendent for the principal position. The Superintendent, in turn, recommended Plaintiff to the Board. Plaintiff further states that the stated reason is pretextual "because Danny Gilliland wanted a white male rather than a black female as the principal at NPHS." (Pl's Response at p. 8). However, there is no evidence to show that Plaintiff's race was a consideration by the Board. The vote by the Board was unanimous with 5 white Board members and 4 African-American Board members voting for Mr. Bull. Plaintiff claims that the African-American Board members voted for Mr. Bull because a vote for her would have been futile based upon the racial makeup of the Board. There is no evidence in the record to support this conclusion.

The Defendants point out that Mr. Bull had twenty-nine (29) years of experience in education compared to Plaintiff's thirteen (13) years. Mr. Bull had eleven (11) years experience

in administration compared to Plaintiff's five (5) years in administration. Mr. Bull also had more experience in the Pulaski County Special School District than Plaintiff. Further, Mr. Bull had successfully completed one year of service as the Interim Principal at NPHS. The Defendants contend that the Board chose Mr. Bull because he was the best candidate for the NPHS Principal position. *See Boudreaux v. Helena-West Helena School Dist.,* 819 F.2d 854 (8th Cir. 1987).

After review of the record, the Court finds that Plaintiff has failed to prove that the Defendants' articulated reason for failing to offer her the NPHS Principal position in 2007 was pretextual. In sum there are no facts in this record that support the conclusion that the District's stated reason for not hiring Plaintiff for NPHS Principal was a pretext for intentional race discrimination. Accordingly, the Defendants are entitled to summary judgment on this issue.

## Retaliation

To prove a retaliation claim, Plaintiff must show: (1) she engaged in protected activity; (2) the School District took adverse employment action against her; and (3) there is a causal connection between Plaintiff's protected activity and the School District's adverse employment action. *Moore*, 524 F.3d at 885 (citing *Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 928 (8th Cir.2007)). Plaintiff claims she was retaliated against by the Defendants for her EEOC Charge filed in July 2006.

Plaintiff has failed to show a causal connection between her EEOC Charge in July 2006 and her unsuccessful bid for the principal position in May 2007. Standing alone, a longer time gap between the protected activity and the adverse employment action "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." *Dhyne v. Meiners*

*Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999)(citation omitted).  Ten months elapsed between the date Plaintiff filed her EEOC Charge and the date the Board chose Mr. Bull as the NPHS Principal.  "With this lengthy delay, any causal nexus inference tends to evaporate."  *Shanklin v. Fitzgerald,* 397 F.3d 596, 604 (8th Cir. 2005)(ten month gap in protected activity and adverse employment action is too long to show causal connection).

The Court finds that Plaintiff has failed to present any evidence of a causal nexus between her filing of an EEOC Charge and the Board's decision to hire Mr. Bull.  Accordingly, the Defendants are entitled to summary judgment on this issue.

In conclusion, the Court finds that Defendants' Motion for Summary Judgment (Docket # 16) is GRANTED.  The Defendants' Motion in Limine (Docket # 21) and Motion to Continue (Docket # 33) are MOOT.  The Clerk is directed to close the case.

IT IS SO ORDERED this 2nd day of September 2008.

James M. Moody
United States District Judge